### In re PALATABLE DISTILLED WATER CO.

#### (District Court, E. D. Pennsylvania. June 14, 1907.)

#### No. 2,651.

BANKRUPTCY—PROPERTY HELD UNDER CONDITIONAL SALE—RIGHT TO RECLAIM.

A bankrupt corporation had in its possession certain machinery, which it obtained under a rental contract by which it was to pay a stated sum of rental in installments, and then had the privilege of purchasing the machinery for one dollar. In the meantime it was to remain the property of the lessor, who had the right to declare the lease forfeited, and retake the property on any default in the payment of rent; time being expressly made of the essence of the contract. The lessee had paid many of the installments at maturity, others after due, and still others were in default at the time of the bankruptcy, but no claim to a forfeiture had been made by the lessor. After bankruptcy the lessor claimed the property, and within a week thereafter, and before it was sold by the receiver, the latter tendered the lessor the amount of the installments of rent still remaining due, with interest, and one dollar additional, which tender was refused. *Held* that, by the failure of the lessor to insist upon a forfeiture when installments became in default, the provision making time of the essence of the contract was suspended if not entirely waived, and could not be enforced against the receiver or trustee in bankruptcy, but that the claimant was entitled to no more than the contract price of the machinery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 199.]

In Bankruptcy. On certificate from referee.

Percival H. Granger, for trustee.
Francis Chapman, for claimant.

J. B. McPHERSON, District Judge. I do not agree throughout with the argument of the learned referee (D. W. Amram, Esq.), but I do agree with his conclusions, and therefore preface the few additional remarks that I have to make by setting out his findings of fact and opinion:

"The S. Twitchell Company filed its petition in the office of the clerk of the district court, claiming title to certain machinery found in the possession of the bankrupt, and advertised for sale and sold by the receiver in bankruptcy, and praying the court to refuse to confirm the sale, and to

direct the receiver to surrender the machinery to the petitioner. The court ordered the sale to be confirmed, and directed that the fund realized be retained by the receiver, and that the question of title to the said machinery be determined by the referee. The attorneys for the petitioner and the receiver agreed in writing that if title is found to be in the petitioner the sum of $500, realized at the sale, less auctioneer's commission, shall be paid to the petitioner, and that if the referee shall find that the petitioner is only entitled to receive the balance of $165 due as 'rent' of the said machinery, the said sum shall be paid to the petitioner, and the balance of the said $500 shall be turned into the general fund of the bankrupt estate. Thereafter the matter was referred to me, and the trustee in bankruptcy, who had in the meantime been appointed, filed an answer to the said petition. Testimony was taken before me and argument of counsel heard. From the testimony I find the following facts: On July 30, 1904, the S. Twitchell Company, petitioner, and the Palatable Distilled Water Company, now bankrupt, entered into an agreement whereby the S. Twitchell Company, called in the said agreement 'lessor,' loaned to the Palatable Distilled Water Company, called in the said agreement 'lessee,' the machinery in question 'for the term of twenty-eight months from the 30th day of July, 1904.' The parties agreed that the value of the machinery was $1,455, and that if it be in any way lost or destroyed prior to actual redelivery to the lessor, said value, with interest from the date of the contract, less the rent that may have been previously paid for its use, shall, notwithstanding anything herein contained, become immediately due and payable, and shall be paid by the lessee to the lessor, and that in case it shall be returned to or be reclaimed by the lessor under the provisions of the contract in a damaged condition, the amount of any damage so done shall be paid by the lessee to the lessor. Other clauses of the agreement restrict the lessee in the use of the machinery, and require the lessee to insure the same for the benefit of the lessor. The lessee agrees to pay to the lessor as rent for hire and use as follows: $100 upon execution of the agreement; $45 per month from August 30, 1904, until July 30, 1905; $25 per month from August 30, 1905, until November 30, 1906; and $15 on December 30, 1906. The agreement further provides that there is 'allowed for two (2) second-hand Mott carbonaters four hundred dollars ($400).' Thus making in all the sum of $1,455, for $955 of which promissory notes, payable from month to month, were given by the lessee to the lessor. It is further agreed that time shall be of the essence of this contract, and shall not be relievable against in equity or at law. It is further agreed that, upon default of the lessee in the performance of its undertakings or payment of rent or failure to purchase the apparatus within the time hereinafter limited, the lessor may at its option, in person or by its authorized agent, without demand first made, repossess itself of the said apparatus, and retain all rent theretofore paid to it, and recover rent up to the time of such repossession, together with damages in case of injury to the apparatus and damages for the breach of the agreement. After the lessee has faithfully performed all stipulations of the contract, it may, at its option, at any time within one month after maturity of the last installment of rent and of all sums due for insurance, purchase the said apparatus at the price of $1, upon payment of which sum the lessor shall convey the said apparatus for the lessee by bill of sale. Nothing contained in said agreement and no action thereunder shall divest the title of the said lessor until the rent and purchase money as above has been fully paid, and until a bill of sale has been delivered, and until such time the apparatus shall remain the property of the lessor; the lessee merely having the right to use the same under the terms of the contract. After the execution of this agreement the machinery was delivered to the lessee. The promissory notes were deposited in bank by the lessor for collection, and were paid from time to time by the lessee—some of them when due, but others after date of maturity. The last payment made by the lessee was a payment of $50 on August 22, 1906, apparently covering two notes of $25 each, due, respectively, April 30, and May 30, 1906. The notes due June 30, July 30, August 30, and September 30, 1906, for $25, respectively,

were presented for payment by the bank, but remained unpaid. On October 26, 1906, a petition in bankruptcy was filed against the lessee, and on November 16, 1906, an adjudication was entered, and the matter referred to me as referee. Notwithstanding default in payment of the installments of rent, the machinery remained in the possession of the lessee, and the lessor made no demand for its return, nor did it in any way attempt to repossess itself of the same in accordance with the terms of the agreement. The only correspondence between the lessor and the lessee with regard to the matter was a statement for the balance of the money due, said statement having been rendered to the lessee together with other accounts of goods which the lessee was buying from the lessor. On or about October 27, 1906, a receiver was appointed for the bankrupt estate, and on November 1, 1906, the petitioner (the lessor) gave notice to the receiver of its intention to reclaim the property. On the following day, to wit, November 2d it was agreed between the attorney for the petitioner and the attorney for the receiver that the petition for reclamation should not be presented at that time, and on November 8, 1906, the said machinery was sold, together with the other assets of the bankrupt estate, under an order of the United States district court. At and before the said sale, counsel for the petitioner read a notice claiming title to the said machinery. Immediately before the sale, the receiver tendered $175 in cash to the attorney for the petitioner to cover the balance of rent, interest, and $1 purchase money due on the said machinery, and later in the day offered $175 in cash to an officer of the petitioner corporation for the same purposes. Both tenders were refused; the petitioner claiming that, notwithstanding all of the above facts, it is entitled to a return of the machinery or the special fund, being the proceeds of the sale of the said machinery, set apart under special order of the court.

"The questions of fact in this proceeding being undisputed, as above, it remains for the referee to consider the questions of law involved. Under the instrument executed between the petitioner and the bankrupt, the machinery was delivered to the bankrupt as a bailment, and the bankrupt obtained no title to the same until after compliance with the conditions set forth therein. These conditions were never complied with by the bankrupt. The so-called 'rent,' amounting to $1,455, was payable as follows: $100 on the date of the agreement, $400 was credited on account of two second-hand Mott carbonaters, and the balance of $955 in monthly installments, according to the promissory notes delivered therefor. Of the entire sum of $1,455, $1,290 were paid, and a balance of rent of $165 remained unpaid at the date of bankruptcy, partly for notes then overdue and partly for notes not yet due. Although it was clearly the intention of the parties, at the time of the execution of the agreement, as expressed therein, 'that time shall be the essence of this contract, and shall not be relievable against in equity or at law,' the testimony shows that this intention was abandoned. The petitioner maintains that its failure to insist upon prompt payment of the monthly rental as the same fell due, and its further failure to repossess itself of the machinery by reason of default in such payments, does not affect its right to insist on a forfeiture of the machinery by reason of the lessee's failure to pay on time. The testimony shows that it was the practice of the parties to ignore the strict terms of the contract with regard to payments. The lessee was often in default. Rent due April 30th was not paid until August 22d; rent due June 30th and for the following months had not been paid at the time of the bankruptcy, October 26th, and was never paid. The petitioner allowed months to pass after its bank had unsuccessfully attempted to collect the rents due without demanding return of the machinery, or apparently ever thinking of such action. Shall the petitioner be permitted to insist upon a strict interpretation of a clause which was undoubtedly introduced into the agreement for its benefit, when by its own action it has clearly indicated for a long time that it did not consider the said clause of vital importance, and when the effect of such insistence at this time would be virtually to redeliver to the petitioner machinery which had been paid for almost in full? On October 25th four monthly payments of the rent were due and had been demanded

and remained unpaid. If, under these circumstances, the lessee had on that day made a proper tender of the balance due, the petitioner would, in my opinion, have had no right to refuse the money and retake its property. On October 26th the petition in bankruptcy was filed. On October 27th a receiver was appointed to take possession of the assets of the bankrupt, and it was then manifestly impossible for the bankrupt lessee to make such tender. Can there be any doubt that, if the receiver had then and there made the tender, the petitioner would have been obliged to accept it? The receiver, however, did not make such tender at that time, and on November 1st he received notice that the petitioner would insist upon its rights under the agreement, and petition the court for possession of the property. What was the receiver's duty under these circumstances? Was he obliged immediately to tender the balance due under the contract? If the lessee has a reasonable time, after demand made upon him, to tender payment (Kinkel v. Roberts, 16 Pa. Dist. R. 179), surely the receiver has such right. The receiver has an additional right to time, because he is an officer of the court, appointed for the purpose of protecting the interests of the creditors, and must be given a reasonable time in every case to determine, after consulting his counsel, what is the proper action for him to take in answer to a demand made upon him by one presuming to have rights against the bankrupt estate. The bankrupt before his bankruptcy must be presumed to know his contracts and his liabilities under them, and may perhaps be held to a stricter interpretation of what is a reasonable time than the receiver of a bankrupt estate, who is not chargeable with such knowledge of the bankrupt's affairs. At any rate, only one week elapsed from the time demand was made until the tender, and this would not be an unreasonable time even as between the original parties. On October 26, 1906, the petitioner in this case had a claim against the bankrupt for a balance of $165, rental due, and had no right, by reason of the failure of the bankrupt to pay the said money on that date, to repossess itself of its property, because it had forfeited its right through its course of conduct theretofore. The bankrupt, on the other hand, on said day owed the petitioner the said sum of $165 rent, with interest thereon, and had the right, upon tender of this sum, together with $1 additional, to demand a bill of sale for the said machinery. The receiver in bankruptcy took the assets of the bankrupt subject to this liability and right. One week after notice of the petitioner's intention to reclaim was given, the receiver made a proper tender of the balance due, together with interest and the additional $1, and, in my opinion, thereby fully complied with the duty of the lessee under the terms of the agreement. The failure of the lessor to accept the said sum was to its prejudice. It was not the lessee's or receiver's neglect but the petitioner's fault that the balance was unpaid. It was the duty of the lessor to accept the money and deliver a bill of sale. Instead of doing this, it now attempts to invoke the jurisdiction of the court to enable it to forfeit the property of its lessee. The court will enforce forfeiture only under such conditions as make it unavoidable, and equity will relieve against forfeiture unless the purpose and intent of the parties has been clearly expressed and could not be carried out in any other way.

"Since time immemorial principles of equity have been recognized by courts of justice in the interpretation of contracts. A court of justice will not permit a contract to be interpreted according to strict law if it works injustice, and, inasmuch as there must be a remedy where there is a wrong, some principle of equity, or at least some bald technicality, can always be found to prevent the injustice. No creditor will be permitted to exact his pound of flesh if a court of justice can prevent it. It is argued in this case that, inasmuch as time is made of the essence of the contract by express agreement, and the clause is added that it shall not be relievable against in equity or at law, therefore the party against whom the contract is to be enforced cannot be heard or permitted to set up anything in derogation of the petitioner's claim. This is tantamount to saying that it is possible for parties to make a contract which would absolutely prevent courts

of law from assuming jurisdiction over a dispute arising between them under such contract. Such a conclusion is impossible. No civilized community will permit any person living within its sovereignty to be debarred from the right to invoke the aid of a court of law in his behalf. Public policy is opposed to such contracts, and will not permit the courts to enforce them. What does the second part of this clause—'that it shall not be relievable against in equity or at law'—really mean? In my opinion it is mere surplusage, and adds nothing to the strength of the prior clause 'that time is of the essence of the contract.' It is merely declaratory of the law that, where the parties agree that time shall be of the essence of their contract, the law will enforce such agreement and equity will follow the law. But the petitioner assumes that, because the express terms of this contract make time of the essence of the contract, therefore it is in fact of the essence of the contract. This begs the entire question. It is clear that the parties intended that time should be of the essence of the contract, but it is also clear from the testimony that by their subsequent conduct they manifested such a change of their intention as to practically read this clause out of the contract. The petitioner made an agreement with the bankrupt whereby it is sought to secure more than its common, legal, or moral right. A clause such as that introduced into this agreement, 'that time is of the essence of this contract, and shall not be relievable against in equity or at law,' can have no other purpose than to act as a coercive measure, for the purpose of enabling the petitioner to use the process of law to secure results which otherwise would be denied it. This, in itself, is not illegal, but it has a moral taint, and, where one seeks to take advantage of such a clause, it should be construed with the greatest strictness against him.

"In justice the petitioner has a claim of a balance of $165 against the bankrupt. This money was offered to it, and it declined to take it, and demanded instead the machinery, on account of which it had already received $1,290. It may be that such demand is legally justifiable, but there is no doubt that it is morally execrable. The petitioner prays the court to grant it its pound of flesh, and declines to accept in lieu thereof the balance of the debt due to it. In this aspect of the case let us examine the clause upon which the petitioner's rights, if any, fundamentally rest. 'It is agreed that time shall be of the essence of this contract, and shall not be relievable against in equity or at law.' If, as the petitioner contends, this means that it is the duty of the lessee to perform its part of the agreement exactly on time, as set forth therein, does it not also conversely mean that the petitioner must perform its part of the agreement exactly on time, as set forth therein? There is nothing in this agreement which imposes its obligation on the lessee alone; its terms are sufficiently broad to include the lessor. Did the lessor consider time of the essence of this contract? Apparently not, for as each payment fell due it refrained from insisting upon collection of the same, and failed to repossess itself of the machinery by reason of such default. The petitioner's counsel, in his argument, alleged that the petitioner did this on account of its consideration for the lessee, because if it had removed the machinery the lessee would have been ruined, because this machinery was the principal means it had of carrying on the business. I am inclined to doubt the tenderness of the petitioner in its dealings with the lessee, in view of the position that it now takes. It is more reasonable and probable to suppose that it did not take out the machinery upon default in payment either because it was to its advantage to allow the machinery to remain where it was, or because its real purpose was to sell the machinery, and not to rent it. Note the provision in the agreement that if the machinery is lost or destroyed the lessee shall pay its whole value, less rent already paid. Why give the lessee the benefit of the rent paid, or why allow it to purchase the machinery for $1 after all the rent is paid? Of course, the answer is clear, the petitioner wants to sell its goods, and does not care to take back partly used machinery if it can avoid it. But, however this may be, after each default in payment the lessor permitted the machinery to remain in the

possession of the lessee, and thereby threw a burden upon the lessee that the agreement did not call for, in that it compelled the lessee to take care of the machinery, preserve and guard the same although at that time, according to the position now taken by the lessor, the lessee had no right whatever to the said machinery, and the machinery was absolutely the property of the lessor. If this be so, what right had the lessor to compel the lessee to assume such a burden, except upon the theory that by tacit agreement a new clause had been read into the contract, whereby the rent could be paid at any time, and the machinery would not be taken away except after due notice and ample opportunity to pay up the arrears?

"The conclusion of the referee is that the intention of the parties to make time of the essence of the contract is clearly expressed in the words of their agreement, but it must be judicially assumed that this intention was changed by the conduct of the petitioner in (1) not insisting upon prompt payment of rent due; (2) allowing rent to fall in arrears without demur many times and for long periods; (3) never attempting, despite these defaults and its claim of right under the contract, to retake possession of its machinery.

"In accordance with this opinion, the referee finds: (1) That at the date of bankruptcy title to the machinery was in the petitioner. (2) That there was then due to the petitioner a balance of 'rent' amounting to $165, with interest as follows: On $25 from June 30, 1906, to October 26, 1906, 48 cents; on $25 from July 30, 1906, to October 26, 1906, 36 cents; on $25 from August 30, 1906, to October 26, 1906, 23 cents; on $25 from September 30, 1906, to October 26, 1906, 11 cents,—total interest, $1.18. (3) That there was due to the petitioner the sum of $1 purchase money, if the option to purchase the machinery was exercised. (4) That the said several sums, amounting to $167.18, were duly tendered to the petitioner by the receiver in bankruptcy and refused. (5) That the option to purchase the machinery was thus duly exercised by the receiver, and that the right of title to the said machinery thereby passed to the receiver. (6) That it was the duty of the petitioner to convey the machinery to the receiver by bill of sale, and that the receiver was entitled to specific performance of the same.

"Now therefore, it is ordered that the trustee pay to the petitioner the said sum of $167.18, less all costs of this proceeding, and that thereupon title to the said machinery, now represented by the special fund of $500, held by the receiver as the proceeds of the sale, vests in the receiver as of the date of the aforesaid tender, to wit, November 8, 1906."

These findings of fact, however, should not be understood to mean that the installments were never paid when they fell due. Most of them were paid promptly, but several installments were not paid at the proper date, and some were not paid at all.

I have no disposition to contend with the claimant concerning the construction of the vital clause in the agreement. No doubt the parties made prompt payment an essential element of their contract, and annexed the penalty of forfeiture to the failure of the bankrupt to comply. This was a provision which it was competent for the contracting parties to adopt, and such a clause will no doubt be enforced in equity as well as at law.

The only question in the case, as I view it, is this: Did the parties afterwards so conduct themselves as to justify the inference that the strictness of this provision for forfeiture was at least suspended, if not altogether waived? Unquestionably, it lay within their power to modify the clause for forfeiture if they chose to do so. It was merely a part of their agreement, and therefore a subsequent contract, either in writing or by parol, could either qualify it or set it wholly aside. Without discussing the evidence at length, I am disposed to

hold that the proper inference to be drawn from the conduct of the parties is that the forfeiture clause was either suspended or waived, and therefore should not be enforced in the present proceeding. The result of enforcing it would be to give the claimant nearly the full value of the property, as well as the proceeds of the property itself.

The report of the referee is affirmed.