# P. J. Soucy, Appellant, v. Louis Obert Brewing Company, Appellee.

1. LANDLORD AND TENANT—*landlord not covenanting to repair may recover rent.* A lessee agreed to "maintain the demised premises in as good condition and repair as the same should be upon taking possession, natural wear, injury by fire, or other inevitable accident, excepted," and that all inside repairs were to be "made at expense of the lessee and all outside repairs at the expense of the lessor." The building was constructed out of inferior material, one wall was out of plumb, and both the lessor and lessee were served with notice by the city building commissioner that the building was in an unsafe and dangerous condition, requiring immediate repair or removal, and directing that it should be braced so as not to be in danger of falling. The lessee abandoned the premises and refused to pay more rent, because the building was untenantable. *Held,* that the two clauses would be construed to require the lessee to make all the repairs, the expense of the outside repairs to be paid by the lessor,.and that in the absence of covenant of lessor to make repairs, the tenant is liable for rent.

2. LANDLORD AND TENANT—*covenant to repair not implied.* A lessee, who undertakes to keep a house, being the whole of the premises, in as good repair as when he took it, fair wear and tear excepted, is not entitled to abandon it upon its becoming uninhabitable for want of repair during the term, the landlord being under no implied obligation to make repairs.

3. LANDLORD AND TENANT—*"caveat emptor" applies.* The rule of *"caveat emptor"* applies to a contract of letting, and the landlord is not bound to make repairs unless he has assumed such duty by express agreement with the tenant.

4. LANDLORD AND TENANT—*waiver of covenant.* Where a landlord covenants to repair before the term, and the tenant takes possession without such repair having been made, he cannot abandon the lease and refuse to pay rent for a breach of any other covenant than for quiet enjoyment.

5. LANDLORD AND TENANT—*general repairs of apartment building.* It is the duty of a landlord of a building, containing many rooms or apartments, which are rented to different persons, to keep up the general repairs of the whole building and the portions controlled by him.

6. LANDLORD AND TENANT—*repairs ordered by building commissioner not waiver.* A landlord, in straightening up a demised building, on order from the building commissioner, does not thereby waive the tenant's covenant to repair.

7. CONTRACTS—*construction of, where written and printed clauses conflict.* Where a type-written clause in a contract conflicts with a printed provision, the former should prevail but effect should be given to all the terms, if possible.

Appeal from the City Court of East St. Louis; the Hon. MORTIMER MILLARD, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed April 23, 1913.

C. E. POPE, for appellant.

CHARLES L. OBERT and DAN McGLYNN, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

This was an action commenced before a justice of the peace and appealed to the City Court of East St. Louis, Illinois, wherein a judgment was rendered against the plaintiff for costs and he prosecutes this appeal.

On September 14, 1909, Henry O. Jones leased to the appellee the premises known as 1001 and 1003 South 16th street, being the two story frame building situated on lot No. 139 of Central Place, to be occupied as a saloon and dwelling from October 1, 1909, until October 1, 1911. Appellee agreed to pay as rent for said premises $1,322 in monthly payments of $55 each, the first payment having been made on the delivery of the lease, and the second on the first day of November, 1909, and the remainder on the first day of each succeeding month. The lease provided, "Said lessee agrees to surrender the possession of said premises to said lessor upon the termination of the term above created, or upon the forfeiture of this lease as hereinafter provided; and further agrees during the occupancy of said demised premises to maintain and keep the same in as good condition and repair as the same shall be upon taking possession thereof, natural wear, injury by fire or other inevitable accident excepted; damage by fire or other calamity rendering said prem-

ises untenantable shall terminate this lease—there shall be no abatement of said stipulated rent or any part thereof so long as such lessee shall retain possession of said demised premises, or any part thereof.'' The lease was of a printed form and immediately following the description of the premises the following clause was inserted in typewriting, to wit: ''It is understood and agreed that all inside repairs are to be made at the expense of said lessee, and all outside repairs at the expense of said lessor.'' It is further provided in said lease as follows: ''To allow the party of the first part free access to the premises hereby leased for the purpose of examining or exhibiting the same, or to make any needful repairs or alterations of said premises which such first party may see fit to make.'' While the lease contains many other provisions the above are all that are necessary for the purpose of determining the questions herein made.

On the 9th day of October, 1909, Henry O. Jones assigned this lease to appellant. The building upon said premises was constructed of inferior material and in its erection it was so built that the east wall was out of plumb and remained so from the time of its erection until it was destroyed by fire on about February 20, 1911. On November 17, 1910, the building commissioner of East St. Louis served a notice on appellant and appellee under the provisions of the city ordinance, notifying the parties that the building was in an unsafe and dangerous condition, requiring immediate repair or removal, and directed that the building be braced and plumbed so that it would not be in danger of falling on the street. Shortly thereafter Jones, the owner of the building, caused iron rods to be run through the middle of it from east to west, in an attempt to make the building plumb; but this did not have the desired effect and the building continued out of plumb and in the bracing that was done some of the studding under a window were pushed off the foundation sill. It also appears from

the evidence that several of the treads and risers were off of the stairway and that the roof leaked in one place. Several of the witnesses for appellee testified to having examined the building, that it was out of plumb, describing the fact that some of the studding were off of the foundation and stairway out of repair and that the building was not safe for habitation. Other witnesses for appellant testified, that while it was true the building was out of plumb, and otherwise out of repair, they did not regard it as being unsafe but that it was in about the same condition as when erected. The lower floor was occupied as a saloon and the upper floor as a living room by the tenants of appellee who, from time to time, subleased it of appellee. It appears that the building and saloon were not actually occupied by any one after about the first of September, 1910, but appellee had placed some saloon fixtures in the building which continued therein until about the 10th to 15th of December, 1910. Appellee paid the rent up to December 1, 1910, and then refused to pay any more because, as the agent says, the building was untenantable, and it is claimed by appellee that at times he could not unlock the front door or get into the building, and that the iron rods put in the building had not helped it any, and that the building was in considerable worse condition than it had been before the repairs were made.

The appellant assigns as error that the verdict is contrary to the law in the case, and the court also erred in rendering judgment on the verdict.

It is insisted by counsel for appellant that under the terms and conditions of this lease the appellee had no right to abandon the premises and refuse to pay rent; while, upon the other hand, appellee claims that the building was untenantable; that the landlord failed and neglected to put it in proper condition for accupancy and that he had the right to abandon the premises and refuse to pay the rent.

The solution of this question depends almost entirely

upon the construction of the lease in question. The lease provides that the lessee "Further agrees during the occupancy of said demised premises to maintain and keep the same in as good condition as the same shall be upon taking possession thereof, natural wear, injury by fire or other inevitable accident excepted." And it was further written in said lease that, "It is understood and agreed that all inside repairs are to be made at the expense of said lessee and all outside repairs at the expense of said lessor." Appellee contends that these clauses are conflicting and that the clause inserted in typewriting should prevail over the printed clause. We think this is a proper rule of construction if they are in conflict. It is, however, a further rule of construction that effect must be given to all the clauses of the contract, if it can be done. The intention of the parties to a joint contract is to be determined by a construction of all of the provisions of the contract. *Ingraham v. Mariner*, 194 Ill. 269.

As we read this contract it provides, in the printed part thereof that the lessee agrees "To maintain and keep the same in as good condition and repair as same shall be upon taking possession thereof, natural wear, injury by fire and other inevitable accident excepted." If there was no other provision with reference to this matter then the lessee would undoubtedly be required to keep and maintain the building in the condition he received it, at his own expense, except as to natural wear, injury by fire and other inevitable accident. The provision written in the lease by the parties at the conclusion of the description of the premises, as we view it, merely provides who is to pay for these repairs. "It is understood and agreed that all inside repairs are to be made at the expense of said lessee and all outside repairs at the expense of said lessor." This does not pretend to change the former provision as to who shall make such repairs but simply provides who shall pay for particular repairs when made. As we read the two clauses, they, when considered to-

gether, require the lessee to make the repairs and that the expense of all outside repairs are to be paid by the lessor. But it is claimed by counsel for appellee that appellant put a construction upon this contract by going and making the repairs, by putting a roof thereon, by straightening up the building when notified by the street commissioner so to do. The work done in straightening up the building should, as we think, be referred rather to the notice of the commissioner than to any provision of the contract. It is also true that this work and the repairing of the roof are permitted by the contract, the fourth clause of which provides, "To allow the party of the first part free access to the premises hereby leased for the purpose of examining or exhibiting the same, or to make any needful repairs or alterations of said premises, which such first party may see fit to make." We do not see that there is any ambiguity in the provision of this lease or inconsistency in the clause referred to.

We are unable to find any covenant in this lease which requires the lessor to make the repairs that are here claimed and in the absence of such a covenant the landlord is not bound to make repairs. "The law is well settled that the rule of *caveat emptor* applies to a contract of letting, and the landlord is not bound to make repairs unless he has assumed such duty by express agreement with the tenant." *Sunasack v. Morey,* 196 Ill. 571; *Smith v. McLean,* 123 Ill. 210.

It is claimed by counsel for appellee that under the decision of *Bissell v. Lloyd,* 100 Ill. 214, that the appellant would be required to make the needed repairs to the building in question. We do not so understand that case. That has application simply to a building containing many rooms or apartments which are rented to different persons and portions of them controlled by the owner, under which circumstances it is his duty to keep up the general repairs of the whole

building, as he has control of it, but an entirely different rule prevails where the whole of the premises are leased to one tenant. *Payne v. Irvin,* 144 Ill. 482. The lessee in this case undertook ''To maintain and keep the same in as good condition and repair as the same shall be upon taking possession thereof,'' natural wear, etc., excepted. ''If he undertakes to keep the house in as good repair as when he took it, fair wear and tear excepted, he is not entitled to quit upon its becoming uninhabitable for want of repair during the term, and the landlord is under no implied obligation to do any repairs in such case.'' Taylor's Landlord & Tenant, sec. 360. While it may be true that this building became more out of repair after the letting than at the time, yet the appellee knew its condition at the time, knew that it was out of plumb and could see that it was built of inferior material, and was doubtless rented at a lower price than it otherwise would have been. It was rented to tenants from time to time until about three months before the refusal to pay rent, and during that time the agent of appellee took several persons to it and endeavored to rent it to them but was unable to do so, and it is reasonable to infer that because of their inability to rent it that they came to the conclusion that it was uninhabitable and that they had a right to abandon it, but we think the contract itself provides what particular things would justify the appellee in abandoning the premises. The provision in the lease is, ''Damage by fire or other calamity rendering said premises untenantable shall terminate this lease.'' There is no claim here of any calamity or damage by fire until February 20th, and it seems to us that to justify the tenant in abandoning the premises they must have been rendered untenantable either by fire or some calamity. ''If he (the landlord) covenant to repair before the term commences, it may be the tenant might refuse to enter upon the term until the repairs were made, but having entered upon the term and received possession, he can

not abandon the lease and refuse to pay rent for the breach of any other covenant except for quiet enjoyment." *Wright v. Lattin,* 38 Ill. 293; *Rubens v. Hill,* 213 Ill. 535.

The evidence in this case was admitted and the instructions of the court given upon the theory that under the provisions of this lease the landlord was bound to make the repairs, and if he failed to do so the tenant was justified in abandoning the lease, which theory we are convinced is erroneous and that much of the evidence admitted was improper and many instructions given erroneous, and that the verdict of the jury is not sustained by the law and the court ought not have rendered judgment upon the verdict, and the judgment of the court is reversed and the cause remanded.

*Reversed and remanded.*