[Civ. No. 5304. First Appellate District, Division One.—October 7, 1926.]

CARL O. RETSLOFF, as Trustee in Bankruptcy, etc., Appellant, v. F. W. SMITH et al., Respondents.

[1] Vendor and Vendee—Contract for Purchase and Sale of Real Property—Interest of Purchaser—Title—Equity.—A contract for the purchase and sale of real property passes to the purchaser the equitable ownership thereof, leaving the naked legal title in the seller for the purpose of securing the payments due from the purchaser and the performance of the contract by the purchaser.

---

1.  See 25 Cal. Jur. 603; 27 R. C. L. 464.

[2] ID.—OWNERSHIP—TITLE—TRANSFER.—The purchaser under a contract for the sale of real property becomes the owner of the whole equitable estate therein, which he can transfer or convey.

[3] ID.—PAYMENTS—DEFAULT OF VENDEE—BANKRUPTCY—TRANSFER.— A transfer by the purchaser of the equitable interest under a contract of sale before all payments had been made, and three days before filing a petition in bankruptcy, is void under section 67e of the Bankruptcy Act and section 3442 of the Civil Code, where he was not in default in his payments under the contract.

[4] BANKRUPTCY — MEANING OF WORD "TRANSFER" — WORDS AND PHRASES.—The meaning of the word "transfer" as contemplated by the Bankruptcy Act is not only the sale of property, but every other different mode of disposing of or parting with property.

[5] VENDOR AND VENDEE—PAYMENTS—ACCEPTANCE AFTER DEFAULT—TIME.—The purchaser under a contract for the sale of real property providing for payments on January 15th and July 15th, and stipulating that the contract should be void if payments were not made as "herein provided," time being of the essence, but permitting the vendor to take papers from escrow after any payment was delinquent sixty days, was not in default on August 1st although he had not made the July 15th payment and was insolvent, where the vendor previously had accepted payments after the time specified in the contract.

[6] ID.—ACCEPTANCE OF OVERDUE PAYMENTS—WAIVER—TIME—NOTICE. A vendor by accepting payments after the time specified in the agreement for sale of real property waives the provision with reference to time being of the essence of the contract as to those payments and cannot thereafter effectually declare a forfeiture of vendee's right to purchase and of payments already made without notice that in future a strict performance will be required.

[7] CONTRACTS—INTENT OF PARTIES—RULE OF INTERPRETATION—CONSTRUCTION—EVIDENCE.—It is fundamental in the interpretation of contracts that the various terms will be harmonized if possible, and if there is any ambiguity in the language of a contract, or any apparent conflict between its different clauses or provisions, the circumstances surrounding its execution and the conditions and motives of the parties shown by recitals in the contract or matters in evidence should be taken into consideration in order that the true intent of the parties may be ascertained, it being the purpose of all construction to ascertain the intent of the parties, and when that intent is ascertained it takes precedence over the literal sense of terms.

2.   See 25 Cal. Jur. 606.
6.   See 25 Cal. Jur. 614; 27 R. C. L. 452.
7.   See 6 Cal. Jur. 253; 6 R. C. L. 835.

[8] ID.—DOUBTFUL MEANING—ACTS DONE UNDER CONTRACT—INTENTION.—If the meaning of the language of an instrument is doubtful, the court will call in the aid of the acts done under it as a clue to the intention of the parties.

[9] ID.—FORFEITURE — CONSTRUCTION. — Where the meaning of a contract is doubtful, any construction that will entail a forfeiture will be avoided if it is reasonably possible.

[10] ID. — CONFLICT BETWEEN TYPEWRITTEN AND PRINTED CLAUSES — SECTION 1651, CIVIL CODE.—Under section 1651 of the Civil Code, where there is a conflict in a printed clause with a typewritten clause in a contract, the typewritten clause will prevail.

[11] VENDOR AND VENDEE — OVERDUE PAYMENTS — TENDER — ACCEPTANCE.—Where the vendor under a contract for the sale of real property would not have accepted a payment due under the contract, a tender thereof by the vendee's trustee in bankruptcy is unnecessary to preserve the vendee's rights thereunder, since a tender of payment would have been fruitless and would have constituted an idle act within the meaning of section 3532 of the Civil Code.

---

(1) 39 Cyc., p. 1303, n. 21, 22.    (2) 39 Cyc., p. 1303, n. 23.    (3) 7 C. J., p. 170, n. 8.    (4) 7 C. J., p. 155, n. 3.    (5) 39 Cyc., p. 1608, n. 69, p. 1609, n. 70.    (6) 39 Cyc., p. 1384, n. 87, p. 1395, n. 82, p. 1611, n. 86.    (7) 13 C. J., p. 536, n. 76, 77, p. 542, n. 30.    (8) 13 C. J., p. 546, n. 54.    (9) 13 C. J., p. 541, n. 26.    (10) 13 C. J., p. 537, n. 89.    (11) 39 Cyc., p. 1563, n. 64 New.

APPEAL from a judgment of the Superior Court of San Diego County. Edgar A. Luce, Judge. Reversed.

The facts are stated in the opinion of the court.

James G. Pfanstiel and Laurence H. Smith for Appellant.

F. F. Grant for Respondents.

CAMPBELL, J., pro tem.—This is an action brought by the plaintiff, as trustee in bankruptcy, to recover certain real property, or the vendee's interest therein, which plaintiff claims was fraudulently transferred by the vendee to the defendants within three days before he filed a

---

8.   See 6 Cal. Jur. 304.
9.   See 6 Cal. Jur. 362.

voluntary petition in bankruptcy and that the transfer is void under the Bankruptcy Act. The case depends upon a written contract for the purchase and sale of real estate. The trial court interpreted this contract adverse to the theory of appellant, and this interpretation presents the main question for review by this court.

On July 16, 1920, John A. Bryant, now adjudged a bankrupt, entered into the contract in question for the purchase from respondents of the real estate described therein. The contract is the usual printed form of "agreement for sale of real estate." The original instrument has been .sent up on appeal and is before the court. The contract, after stating the purchase price of $2,500; the fact that $500 had been paid and the receipt acknowledged; that the balance of $2,000 was to be paid at the rate of $500 per year beginning July, 1921, together with interest at six per cent per annum, payable semi-annually, July 15th and January 15th, on deferred payments and the payment of taxes, provides as follows:

"Time is hereby declared to be the essence of this contract, and should purchaser fail or neglect to make said deferred payments, or any of them, at the time and in the manner herein provided, then and in that event this receipt and contract shall at once become null and void, and the said parties of the first part shall be at once released from any and all obligation to make any conveyance hereunder, or to convey the property herein described to said purchaser. It being agreed that it is impossible to fix and determine the actual damages arising out of the failure of said purchaser to make said deferred payments, it is hereby agreed that all moneys paid upon the purchase price of said property shall be by the said parties of the first part retained and held as and for liquidated damages arising and caused by the failure of said purchaser to comply with the terms hereof.

"And the parties of the first part, on receiving such payments, at the time and in the manner above mentioned, agree to execute and deliver to the party of the second part, or to his heirs, executors or assigns, a good and sufficient deed, and to furnish a certificate of title showing clear in the then grantor except as to obligations required herein or assumed by the party of the second part.

"*It is further understood that all payments on this contract be made at the East San Diego State Bank, and if any payment become delinquent sixty days the parties of the first part shall have the right and power to take from escrow all papers pertaining to this sale.*"

The last paragraph, italicized, is typewritten, and the remainder of the contract above quoted is the printed form of contract.

Payments aggregating $1,000 were made on the principal of the contract, leaving unpaid a balance of $1,500. During the month of July, 1922, a further payment of $500 on the principal and a payment of accrued interest became due and were not paid. On August 1, 1922, John A. Bryant delivered a written instrument in the form of a letter to respondents F. W. Smith and J. B. Azdell, addressed to them and signed by him, advising them of his inability to make his payments on the contract, as follows: "Owing to financial stress I find that I am unable to carry on the agreement for the sale of the east 20 ft. of lot 25 and 26 in block 45 of City Heights Addition, and I hereby notify you that I am unable to continue the same. I hereby release you from all agreements made to me, and declare that I hereby forfeit all my rights in the agreement on the above described property." This release or transfer of the interest of Bryant in the property to respondents was made voluntarily and without any consideration whatever.

Three days later, to wit, on August 4, 1922, John A. Bryant filed his voluntary petition in bankruptcy and was thereupon adjudged a bankrupt, and plaintiff was thereafter appointed the trustee of his estate.

The trial court found that on August 1, 1922, and for a long time prior thereto, the said John A. Bryant was insolvent, but further found that defendant did not know or have reason to believe that he was insolvent on the first day of August, 1922, and that said defendants did not know or have reason to believe and did not intend that the termination of said contract would hinder, delay, and defraud creditors of said Bryant, and that said defendants did not re-enter possession of said premises and said agreement was not terminated for the purpose of hindering, delaying, and defrauding creditors. The court further

found that plaintiff, as trustee in bankruptcy, did not learn of the existence of the contract until on or about the fourteenth or fifteenth day of September, 1922, and did not learn of its terms until after that date. After the trustee in bankruptcy learned of the terms of the contract he instituted this action for the purpose of recovering the property or the equity of the bankrupt therein—it being admitted that only $1,500 remained unpaid on the principal sum and that the property was worth $5,000 at the time of the commencement of the action and that there were not sufficient assets in the bankrupt's estate to pay the claims filed against his estate.

Two questions are presented on this appeal, the decision of which is determinative of the action, viz.: Was the bankrupt Bryant in default in his payments on the contract on August 1, 1922? and, Was he possessed of a property interest in the land which he transferred back, or released to respondents, within a few days of filing his voluntary petition in bankruptcy?

[1]   A contract for the purchase and sale of real property passes to the purchaser the equitable ownership thereof, leaving the naked legal title in the seller for the purpose of securing the payments due from the purchaser and the performance of the contract by the purchaser. If the purchaser dies while the contract is in force and effect, his interest passes to his heirs as real property; if the seller dies while the contract is in force and effect, his interest passes to his heirs as personal property. The effect of such contracts is well fixed and defined by law.

[2]   Therefore, Bryant, as the purchaser of the real property under the contract of sale, became the owner of the whole equitable estate therein, which he could transfer or convey. (*Jackson & Thomas* v. *Torrence*, 83 Cal. 521, 537 [23 Pac. 695]; *Brown* v. *Lansing*, 129 Mich. 117 [95 Am. St. Rep. 427, 57 L. R. A. 643, 88 N. W. 384].)

[3]   The main question presented is as to whether the bankrupt Bryant was in default in his payments under his contract on August 1, 1922. If not, he was on that date the owner of the whole equitable interest in the property in question, and his transfer of such interest voluntarily and without consideration was in violation of the Bankruptcy Act and the laws of this state, as the termination

of Bryant's interest and his passing it back to respondents constituted a mode of disposing, of or parting with property (*Scholle* v. *Finnell,* 173 Cal. 372 [159 Pac. 1179]; *In re Peabody,* 154 Cal. 173 [97 Pac. 184]; *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 444 [45 L. Ed. 1171, 21 Sup. Ct. Rep. 906, see, also, Rose's U. S. Notes]). Section 67e of the Bankruptcy Act provides: "That all conveyances, transfers, assignments, or incumbrances of property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition with the intent and purpose on his part to hinder, delay, or defraud his creditors or any of them shall be null and void as against the creditors of such debtor," etc.

Section 3442 of the Civil Code provides: "That any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent and void as to existing creditors."

[4] In *Pirie* v. *Chicago Title & Trust Co., supra,* the supreme court of the United States, in commenting on the meaning of the word "transfer" by the Bankruptcy Act, says: " 'Transfer' is defined to be not only the sale of property, but every other different mode of disposing of, or parting with property. All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished." Under the meaning thus given to the word "transfer" it follows that if the bankrupt Bryant was the owner of the equitable interest in the property in question on August 1, 1922, then the transfer or conveyance by him to respondents voluntarily and without consideration constituted a transfer or conveyance within the spirit and meaning of the Bankruptcy Act.

[5] The trial court, as conclusions of law from the facts found, concludes "that by reason of the failure of the said John A. Bryant, or anyone in his behalf or stead, or at all, to pay the annual installment due on the purchase

price on July 15, 1922, the contract of purchase by its terms became at once null and void, and from and after the 15th of July, 1922, the said John A. Bryant had no right, title and interest in or to the said property, and the defendants became the sole owners and entitled to the possession of the same," and "that the clause 'if any payment become delinquent sixty days the parties of the first part shall have the right and power to take from escrow all papers pertaining to this sale' in said contract of purchase, has reference to the time in which the escrow papers shall lay in escrow, and has no bearing and does not change or modify the times when the payments shall become due and payable as set out specifically in said contract in prior paragraphs and clauses."

Appellant urges that the trial court erred in this conclusion; that as a matter of law the clause in the contract "if any payment become delinquent sixty days" is a sixty days' grace period allowed the purchaser in which to make the payments after they become due, and further that having accepted payments on prior occasions after they were due, waived strict performance and the "time is of the essence" provision of the contract.

The court found as facts that the installment of interest due January 15, 1921, was not paid until January 18, 1921; that the installment on the principal and the interest due July 15, 1921, were not paid until July 19, 1921, and that the interest due January 15, 1922, was not paid until January 23, 1922. The evidence is undisputed as to these payments and as to the fact that no notice to reinstate the "time is of the essence" clause of the contract was ever given, but to the contrary that the forfeiture did not take place until August 1, 1922. **[6]** A vendor by accepting payments after the times specified in the agreement for sale of real property waives the provision with reference to time being of the essence of the contract as to those payments and cannot thereafter effectually declare a forfeiture of vendee's right to purchase and of payments already made without notice that in the future a strict performance will be required. (*Newell* v. *E. B. & A. L. Stone Co.*, 181 Cal. 388 [9 A. L. R. 993, 184 Pac. 659]; *Boone* v. *Templeman*, 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947]; *Stevinson* v. *Joy*, 164 Cal. 279 [128 Pac. 751]; *Butte*

*Creek Cons. Dredging Co.* v. *Olney,* 173 Cal. 697 [161 Pac. 260]; *Pearson* v. *Brown,* 27 Cal. App. 125 [148 Pac. 956]; *Burmester* v. *Horn,* 35 Cal. App. 549 [170 Pac. 674]; *Myers* v. *Williams,* 173 Cal. 301 [159 Pac. 982]; *In re Palatable Distilled Water Co.,* 154 Fed. 531.)

We cannot but conclude that the construction urged by appellant is correct, that is, that a forfeiture of the contract could not be invoked until the expiration of sixty days after the payment became due—that the sixty-day period which must elapse before the vendor would have the right to remove the papers from escrow was in effect sixty days' grace allowed after the payment became due in which to make the payment.

The printed portion of the contract provides in substance that in case the purchaser fails to make any deferred payment in the manner and at the time therein provided, the contract "shall at once become null and void." The typewritten portion provides three things; first, that all payments shall be made at the East San Diego State Bank; second, a reference to or presupposes an escrow of all papers "pertaining to this sale" at such bank; third, a sixty-day period during which time payments may become delinquent. In other words, the typewritten clause provides that the vendee "shall have the right and power to take from escrow all papers pertaining to this sale." But when? Sixty days after any deferred payment becomes delinquent. By reason of this provision the vendors could not take from escrow these papers until sixty days had transpired after a payment became delinquent except only by a new agreement with the vendee. This new agreement was what actually took place August 1st and constitutes the transaction out of which this action arose.

If the latter provision of the contract is to be given any rational meaning at all, it must be held to mean that after a payment becomes due and is not paid—becomes delinquent—there is a period of sixty days thereafter during which time no forfeiture will occur or can be declared. This construction does not nullify the former provision but harmonizes the two, and gives both provisions life and meaning. The former clause provides that the contract shall become null and void in the event the payments are not made at the times and in the manner *herein provided.*

The *manner and times* herein provided mean at the East San Diego State Bank upon the dates specified with a sixty-day grace period before the "null and void" clause shall automatically operate.

[7] It is fundamental in the interpretation of contracts that the various terms will be harmonized if possible. (*Mickle* v. *Sanches*, 1 Cal. 200; *Cohen* v. *Cohen*, 141 Cal. 534 [75 Pac. 100]; *Jones* v. *Van Nuys*, 161 Cal. 158 [118 Pac. 541]; *Griffin* v. *Long*, 21 Cal. App. 308 [131 Pac. 760].) "The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.) If there is any ambiguity in the language of a contract or any apparent conflict between its different clauses or provisions, the circumstances surrounding its execution and the conditions and motives of the parties as shown by recitals in the contract or matters in evidence should be taken into consideration in order that the true intent of the parties may be ascertained. The purpose of all construction is to ascertain the intent of the parties. When the intent of the parties is ascertained it must always take precedence over the literal sense of terms. (*Saunders* v. *Clark*, 29 Cal. 304; *Sprague* v. *Edwards*, 48 Cal. 249.)

[8] Lord Chancellor Sugden once said: "Tell me what you have done under a deed, and I will tell you what that deed means." If the meaning of the language of an instrument can be considered doubtful, the court will call in the aid of the acts done under it as a clue to the intention of the parties. (*Hill* v. *McKay*, 94 Cal. 5 [29 Pac. 406]; *Rockwell* v. *Light*, 6 Cal. App. 563 [92 Pac. 649]; *Dollar* v. *International Banking Corp.*, 10 Cal. App. 83 [101 Pac. 34]; *Vulcan Iron Works* v. *Cook*, 5 Cal. App. 410 [114 Pac. 995]; *Keith* v. *Electrical Engineering Co.*, 136 Cal. 178 [68 Pac. 598]; *Kennedy* v. *Lee*, 147 Cal. 596 [82 Pac. 257]; *Mitau* v. *Roddan*, 149 Cal. 1 [6 L. R. A. (N. S.) 275, 84 Pac. 145]; *Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513 [153 Pac. 951].) When this rule is applied in the instant case it is obvious that if Bryant had tendered the principal and interest due July 15, 1922, to the bank at any time between that date and August 1st, the bank would have accepted it, credited it to respondent Smith's account just as

it had at previous times, and his equity would have passed into his bankrupt estate. To hold otherwise a construction would have to be placed upon the contract that would be extremely technical and literal and without reference to what the parties intended and would entail a . forfeiture. **[9]** If the meaning of a contract is doubtful, any construction that will entail a forfeiture will be avoided if it is reasonably possible. (*Behlow* v. *Southern Pacific R. R. Co.,* 130 Cal. 16 [62 Pac. 295]; *Madison* v. *Northwestern Ins. Co.,* 141 Cal. 484 [75 Pac. 113]; *New Liverpool Salt Co.* v. *Western Salt Co.,* 151 Cal. 479, 485 [91 Pac. 152].)

If the contract became "null and void" immediately on delinquency, there would be no reason for the papers to remain in escrow thereafter for sixty days. The typewritten clause does not change "the times when the payments shall become due and payable," but is a part and parcel of the "null and void" clause and must be read with it. In other words, it has to do with the forfeiture provision of the contract by continuing the life of the contract for sixty days after payment becomes due and payable.

In *Jones* v. *Van Nuys, supra,* the supreme court, through Mr. Justice Lorigan, succinctly states the rule of interpretation of contracts as follows: "In construing a contract the basic rule is to be adopted that each clause is to be considered with reference to every other clause upon which it has any bearing, and all the clauses and provisions are to be construed together as the unified medium whereby the intent of the parties to the instrument is to be reached, and this rule is to be applied here."

If both of the provisions in question in the instant case are to be construed together along with all other provisions of the instrument as the "unified medium" of intent of the parties, the conclusion is impelling that the parties intended that a forfeiture would not occur by the terms of the contract until sixty days after a payment became due and payable. Again, if the contract became null and void automatically immediately a payment became due and was not paid, all obligations thereunder to pay would terminate with the contract, and no payment could be delinquent for sixty days thereafter. Such a construction not only does violence to the literal words of the contract but wholly ignores the rule of interpretation announced in the author-

ity cited: "that the whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other," and that "all the clauses and provisions are to be construed together as the unified medium whereby the intent of the parties to the instrument is to be reached."

**[10]** While the two clauses in the contract can be harmonized without a forced or strained construction, yet if there is any apparent conflict greater weight is to be given to the written clause than to the printed clause (Civ. Code, sec. 1651; *Vorwerk* v. *Nolte*, 87 Cal. 236 [25 Pac. 412]), and likewise where there is a conflict in a printed clause with a typewritten clause, the typewritten clause will prevail. (*Bennett* v. *Giles*, 111 Ill. App. 433; *Soucy* v. *Louis Obert Brewing Co.*, 180 Ill. App. 69; *Heyn* v. *New York Life Ins. Co.*, 192 N. Y. 1 [84 N. E. 725]; *Producers Oil Co.* v. *Snyder* (Tex. Civ. App.), 190 S. W. 514.)

Respondent contends that the fact that John A. Bryant became insolvent automatically terminated the contract, and cites *Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U. S. 581-591 [60 L. Ed. 811, L. R. A. 1917B, 580, 36 Sup. Ct. Rep. 412, see, also, Rose's U. S. Notes], *In re Neff*, 157 Fed. 57 [28 L. R. A. (N. S.) 349, 84 C. C. A. 561], and *Rogers Lamb Co.* v. *Coast Securities Co.*, 58 Cal. App. 744 [209 Pac. 246], in support of his contention. These authorities, in our view, do not sustain the position taken. The first case holds that the filing of an involuntary petition followed by an adjudication in bankruptcy is the equivalent of an anticipatory breach of an executory contract to carry baggage and passengers for a cash consideration, where the trustee in bankruptcy does not elect to assume performance and gives rise to a provable claim in the bankrupt estate and sustains a claim for damages growing out of a breach of contract. In *Re Neff* the court holds that bankruptcy, before the time arrives, of one who has promised to return the amount paid for stock of a corporation if it is surrendered within a certain time does not prevent the claim from being a fixed liability, absolutely owing at the time of the bankruptcy, so as to be provable under the Bankruptcy Act, since the promisee may treat the bankruptcy as a repudiation of liability and immediately bring an action for damages.

The Rogers Lamb Company case is to the effect that as between the parties themselves under a conditional sales contract of personal property where the title remains in the vendor, the vendor has the right to take possession of the property when it is abandoned by the vendee.

[11]  Counsel urges that insolvency terminates the contract, but the cases cited, while they do not parallel the instant case, hold only that an adjudication in bankruptcy is the equivalent of an anticipatory breach, in which event the measure of damages in an action for damages would be the amount due under the contract. This the trustee in bankruptcy is attempting through this action to pay. It is true that the trial court found "that neither John A. Bryant, nor the plaintiff herein, or anyone on their behalf, or at all, made or offered to make, any other payments or payment to these defendants on account of said written executory contract," but the court also found "that at no time after the 1st day of August, 1922, would said defendants, or any of them, have accepted any sum or sums on account of said contract from plaintiff or from anyone." A tender of payment would therefore have been fruitless, and "the law neither does nor requires idle acts." (Civ. Code, sec. 3532.)

It follows that the transfer from John A. Bryant to respondents made on August 1, 1922, is void and that Carl O. Retsloff, as trustee of the estate of John A. Bryant, bankrupt, is entitled to all the right, title, and interest in and to the property which John A. Bryant had at the time and prior to the transfer of his equitable ownership to respondents, and that upon payment to respondents, within a reasonable time, of all sums which the court may adjudge to be due under the contract, Carl O. Retsloff, as trustee, be substituted to all the rights of John A. Bryant, bankrupt, in and to such contract.

The judgment is reversed, with instructions to the trial court to enter judgment in accordance herewith.

Tyler, P. J., and Knight, J., concurred.