[Civ. No. 4742. Third Appellate District.—February 18, 1933.]

ANNA POSHARD, Respondent, v. E. A. PARKFORD et al., Appellants.

Pease, Dolley & Elson for Appellants.

Jonah Jones, Jr., for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendants for the sum of $823.68 and costs of suit. From this judgment the defendants appeal.

The record shows that in 1922 the defendant Parkford purchased 16 lots in the Santa Fe Oil Field; that following the purchase of said property the defendant Parkford instituted a sales campaign for the sale of twenty-five per cent of the oil which should be developed in and extracted from such field. The twenty-five per cent was divided into 2,000 parts, and of these the plaintiff became the owner of twenty-four; that is to say, the plaintiff in this action was and is the owner of 24/2000ths of one-fourth of the oil produced from the lots purchased by the defendant Parkford.

Following the sale of the 2,000 parts representing twenty-five per cent of the oil that should be produced of and from the lots purchased by the defendant Parkford, the defendant Parkford drilled four wells upon the premises, only two of which produced oil. Following the sale of the 2,000 parts representing twenty-five per cent of the oil that should be produced of and from the lots purchased by Parkford, an agreement was entered into that the money received from the sale of such oil should be deposited with the First National Bank of Ontario, to be by said bank paid to the holders and owners of the 2,000 parts, respectively, according to their interests. Seventy-five per cent of the oil produced from the premises was reserved to the defendant Parkford. The instruments evidencing the sale and conveyance to the respective purchasers of the 2,000 parts reserved to the defendant Parkford the sole and exclusive right of exploring and operating the premises for the production of oil. For convenience we will follow the course pursued by counsel in speaking of the respective parts as units.

One of the deeds or instruments conveying units to the plaintiff contained the following: "The grantor retains and reserves to himself the sole and exclusive right to drill for, develop, extract, take and remove from said land, oil, gas

and other mineral substances; also, grantor reserved to himself all oil, gas and other mineral substances produced, taken and saved from the above-described lands herein expressly conveyed, and agrees to pay all costs of operating said property out of his proportion of said oil and gas.'' Other deeds conveying units contained the following: ''All oil and gas and other mineral substances in and under said land, except the part hereinbefore granted to said grantee, and the sole exclusive right to drill for, develop, extract, take and remove from said land, oil, gas and other mineral substances, together with the right to use so much of the surface as may be necessary for construction of tanks, derricks and other equipment, including roads for operating upon said land for said purposes, are hereby expressly reserved by the grantor; provided, that the grantee shall always have and receive ——— two thousandths of onefourth of the net production of oil, gas, and other mineral substances produced, taken and saved from the above described land.'' All of the instruments of conveyance reserved to the grantor the right to sell all of the oil produced from the premises at the same time, and with and as a parcel of one lot of the seventy-five per cent of the oil reserved.

From the time that two of the four wells drilled by the defendant Parkford were brought into production, until some time in the year 1928, the defendant Parkford paid to the First National Bank of Ontario the money received from the sale of twenty-five per cent of the oil produced, without any deduction therefrom for any purpose. The record shows that the defendant Parkford sank the four wells at his own expense.

There is some controversy appearing in the record as to whether the sales agents employed by the defendant Parkford during his campaign to sell the respective units to which we have referred promised that the defendant Parkford would sink two wells or four wells at his own expense. From the construction which we think should be applied to the instruments of conveyance involved in this action, it is immaterial as to whether the sales agents of the defendants made promises that the defendant Parkford would sink either two or four wells in his attempt to produce oil. In 1928 the two producing wells ceased commercial production, and the defendant Parkford entered into an agreement

with the Rio Grande Oil Company to further develop the premises referred to herein. This agreement, after recognizing the rights of the unit holders to a certain portion of the oil produced, contained, among other things, the following: "That the party of the second part (being the Rio Grande Oil Company), shall retain the balance of all oil produced and saved from each well on said premises, being 75 per cent thereof, until the net value of said 75 per cent of said oil produced from each well, after deducting all production and operating costs and expenses of each well, shall equal all the cost and expense of drilling, completion and equipping for production of each well under the terms of this agreement, provided, however, that in no event shall the total cost and expense of drilling, completion and equipping for production of each well exceed the sum of $100,000.00. That after the party of the second part has been repaid the total cost and expense of drilling, completion and equipping for production of each of said wells out of said 75 per cent of oil produced and saved from each of said wells," provision is made for a division of the expenses of operating the premises between the company and the defendant Parkford.

After the wells drilled by the Rio Grande Oil Company were brought under production twenty-five per cent of the net product of the wells was sold for the benefit of the unit holders, and the moneys received therefor deposited with the First National Bank of Ontario, to be distributed by said bank to the respective unit holders according to their interests.

Subsequent to the entering into the agreement with the Rio Grande Oil Company the defendant Parkford sought and obtained from a number of the unit holders an agreement reassigning to him one-half of their interests theretofore owned by them in their respective units, and likewise sought a reassignment from the plaintiff of one-half of the units held by her to assist him in paying his portion of the expense incurred under his agreement with the Rio Grande Oil Company in drilling wells. The plaintiff declined to reassign any of her interests in said units, and thereupon the defendant Parkford notified the bank not to pay to the plaintiff any of the proportion of the moneys deposited by the Rio Grande Oil Company for her benefit. After making

demand for the money, and being refused, the plaintiff began this action.

Upon this appeal the appellants advance the argument that the plaintiff is a tenant in common with the defendant E. A. Parkford, and that she is only entitled to participate in the profits derived from the oil produced upon the premises heretofore referred to, after paying her proportion of the expenses of drilling and operating.

On the part of the respondents it is contended that the relationship of landlord and tenant existed between the plaintiff and the defendant Parkford. We do not deem it necessary to enter into any discussion of the name to be given to the relationship existing between the plaintiff and the defendant Parkford. While the conveyances or transfer of units made by the defendant Parkford to the plaintiff are denominated as deeds, they are also contracts, and whether the relationship between the plaintiff and the defendant Parkford is one of cotenancy or one of landlord and tenant, does not obviate the fact that the instruments of conveyance or transfer of units from the defendant Parkford to the plaintiff establishes a contract between the parties thereto, and the intent of that contract should be given full force and effect, irrespective of mere names.

On the part of the appellant it is contended that that provision of one of the instruments of transfer specifying that the grantor shall pay all costs and expenses of operation does not include the expense of drilling, etc. There does not appear to be any real controversy as to the meaning of the words "net product", which was to be turned over to the unit holders, the twenty-five per cent product meaning that quantity of oil after it was rendered marketable. The controversy hinges around the words binding the grantor to pay operating expenses. Testimony was introduced, *pro* and *con,* as to the meaning of those words. On the part of the respondent, that it included the expenses of drilling. On the part of the appellant, that such expenses were not included.

From the beginning of the production, after the execution of the instruments of transfer until after the agreement had been entered into by the defendant Parkford, with the Rio Grande Oil Company, the parties to this controversy, and also all the other unit holders, gave a construction to the

words in question, to wit: that it was the intent and meaning of the words used, that the unit holders were not to be charged with any expenses incurred by the defendant Parkford, in the drilling of wells and in bringing the wells into production. For a period of between five and six years this interpretation was given to the instruments of transfer by the defendant Parkford, as well as by the unit holders, and the defendant Parkford continued to deposit with the First National Bank of Ontario the money received from the sale of twenty-five per cent of the oil produced upon the premises referred to herein, without deducting therefrom any costs of drilling, operating, erecting buildings or otherwise.

In the case of *Loomis Fruit Growers Assn.* v. *California Fruit Exchange,* 128 Cal. App. 265 [16 Pac. (2d) 1040], this court, having under consideration the interpretation given to a contract by the parties, where the wording of the contract was somewhat ambiguous, quoted with approval from 6 California Jurisprudence, 304, as follows: "The intention of the parties is to be ascertained by the writing alone, if possible, and not from the subsequent actions of one of them. However, it is well recognized that the terms of a contract may be manifested by conduct, when not stated in words. And when the meaning is doubtful, the acts of the parties done under a contract, afford one of the most reliable means for arriving at their intention. . . . It is to be assumed that they best know what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to his own interests, and to insistence on his rights, and that whatever is done under them, contemporaneously with the execution of the contract, is done under its terms, as they understood and intended it should be." This court then said: "The principle that parties should be bound by the construction placed upon a contract by a long course of conduct is eminently just and fair, and we think amply supported by the authorities. (6 Cal. Jur., p. 306; *Alexander* v. *Walling,* 105 Cal. 625 [288 Pac. 138]; *Retsloff* v. *Smith,* 79 Cal. App. 443 [249 Pac. 886]; *Kennedy* v. *Lee,* 147 Cal. 596 [82 Pac. 257].)"

In the very agreements entered into between Parkford and the Rio Grande Oil Company an interpretation is given to the contract theretofore made by him with the unit holders,

by providing that the Rio Grande Oil Company should pay over to the First National Bank of Ontario the moneys received from twenty-five per cent of the net product of the oil produced, and the Rio Grande Oil Company and the defendant Parkford, out of the seventy-five per cent, were to pay the costs of drilling, operating, etc.

The findings of the trial court are to the effect that the instruments conveying the 24/2000ths of one-fourth of the oil produced upon the premises referred to in the contracts belonged to the plaintiff, and that she was under no obligation to contribute to any of the expenses incurred by the Rio Grande Oil Company or the defendant Parkford, in the drilling of wells, bringing them under production or operating the wells thereafter, and the interpretation of the instruments which we have set forth herein was likewise given thereto by the trial court.

The appellants further contend that the trial court erred in failing to find as to the relationship existing between the unit holders and the defendant Parkford, and, further, that the court should have found that the legal relationship between said parties was that of tenants in common. If such a finding had been made, it would not have relieved the defendant Parkford from the obligations of his contract, which was entered into and became a part of the instruments of conveyance, as we have heretofore stated.

The judgment of the trial court is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 20, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1933.