[Civ. No. 6039. Third Appellate District.—February 6, 1939.]

MARIE L. LEVER et al., Respondents, v. FRED B. SMITH et al., Appellants.

John H. Burke and J. Merrill Levy for Appellants.

Eugene Tincher and Carl E. Cameron for Respondents.

STEEL, J., *pro tem.*—The plaintiffs brought this action for a declaration of their rights under certain written instruments attached to the complaint as exhibits. They seek to have the plaintiff Marie L. Lever declared to be the owner in fee of a certain lot or parcel of land, and by reason thereof entitled to a proportional share or benefit in the income accruing under a community oil and gas lease covering this and other lots. Judgment was entered in favor of the plaintiffs, from which the defendants appeal.

The property covered by the lease comprises a city block divided into lots in the Signal Hill District, and owned by some eighteen or twenty different individuals. The lot here involved was originally owned by Hattie L. Smith, now de-

ceased, and a predecessor in interest of plaintiff Marie L. Lever.

The following are the procedural steps giving rise to the existing controversy. In January, 1922, the owners of all lots in the block, including Hattie L. Smith, executed an instrument designated as "Articles of Association", the effect of which was to provide for the leasing of the property as a unit for development of oil and gas. On February 10, 1922, Hattie L. Smith entered into an agreement for the sale of her lot, subject to said community oil and gas lease, to Emma C. Osborne and George M. Tietjen, which agreement was recorded August 3, 1922. On the 11th day of February, 1922, pursuant to the general plan provided in said "Articles of Association", all of the persons signing said articles delivered to plaintiff Farmers and Merchants Trust Company of Long Beach, as trustee, grant deeds covering their respective lots or parcels of land, purporting to convey in trust the minerals under the various parcels together with instructions to the trustee relative to leasing the same. Thereafter, and on July 21, 1922, all of the said parties aforesaid, with the exception of Hattie L. Smith, executed and delivered to the plaintiff trustee additional instructions directing it to execute a form of lease thereunto attached in favor of a certain oil company as lessee. These instructions were also signed by Emma C. Osborne and George M. Tietjen as the owners of the lot here in question, and among the provisions thereof the following appears:

"You are further instructed that in making payments of bonus, royalties, and other amounts which may come into your hands as lessor in said lease, you shall pay all such amounts to the record owners of the various parcels as shown at the date of delivery of said lease, . . . "

In the lease which the plaintiff trustee was directed to execute appears the following:

"It is agreed that all of the royalties herein referred to shall belong to the owners in fee simple of the respective parcels of land herein described in that proportion which the acreage of their respective parcels bear to the total acreage of the lands described in this lease, . . . "

Pursuant to said instructions the aforesaid lease was executed and delivered on or about the 6th day of November, 1922. Subsequently, oil and gas was produced on said property, and royalties have been disbursed to the various owners

of said lots, including plaintiff Marie L. Lever and her predecessors in interest, Emma C. Osborne and George M. Tietjen.

On or about September 1, 1922, Hattie L. Smith, pursuant to the terms of the contract dated February 10, 1922, made and executed to the said Emma C. Osborne and George M. Tietjen a grant deed conveying to them as joint tenants, the said lot. This deed was recorded on November 22, 1922. Upon the death of Emma C. Osborne in 1930, George M. Tietjen became the sole owner as the surviving joint tenant, and in 1934, sold and conveyed said lot to plaintiff Marie L. Lever.

It appears from the record that Hattie L. Smith died intestate in the year 1929, and that the defendant Fred B. Smith, a son, was appointed administrator of her estate in 1935. It further appears that no royalty payments were ever made to Hattie L. Smith, and that no demand or claim was made by her or by anyone on behalf of her estate until the institution of the instant action.

It is the contention of appellants herein that Hattie L. Smith by the deed which she executed and delivered February 11, 1922, to the plaintiff trustee Farmers and Merchants Trust Company divested herself of all right, title and interest in and to the oil and gas underlying said lot, and by reason thereof, the subsequent deed which she executed and delivered pursuant to the contract of sale could not include the minerals in question. Therefore, Hattie L. Smith and her estate are entitled to all of the income accruing pursuant to said lease. This contention is based upon the theory, as stated by appellants, that "the only question involved is whether a landowner can divide the fee by granting the mineral under said land to one person, and by granting the fee of said land to another person".

The oil and gas in place doctrine has been the subject of consideration in numerous cases in this state. ■ It is generally recognized that the ownership or title to oil and gas in place is a limited interest or estate in land in the nature of a *profit à prendre*. (*Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871], and cases cited; *Richfield Oil Co.* v. *Hercules Gas Co.*, 112 Cal. App. 431 [297 Pac. 73].)

In the case of *Callahan* v. *Martin*, *supra*, the court in discussing the nature of an assignee's rights as a purchaser of an oil royalty interest from an owner of the fee, says:

"Some jurisdictions adhere to the theory that the owner of land has an estate in oil and gas beneath the surface in like manner as he has an estate in the surface; that oil and gas in place beneath the surface of land constitute a part of the land, and as such, are real property, may be granted separate and apart from the surface, and when so granted, vest in the assignee an estate in definite corporeal real property. . . . There are intimations of approval of the oil and gas in place doctrine in some of the decisions in this state. (Citing cases.) But other cases unequivocally declare that the owner of land does not have an absolute title to oil and gas in place as corporeal real property, but, rather, the exclusive right on his premises to drill for oil and gas, and to retain as his property all substances brought to the surface on his land." (Citing cases.) "Giving full weight to this statement of the nature of the landowner's rights in oil and gas, we are of the view that an operating lessee under a lease for a term of years, or for a term of years and so long as oil shall be produced in paying quantities, has an interest or estate in real property in the nature of a *profit à prendre,* which is an incorporeal hereditament, and that the assignee of a royalty interest in oil rights under an assignment by the landowner also has an interest or estate in real property in the nature of an incorporeal hereditament."

██ In the instant case it will be observed that the contract of sale, which is the forerunner of the fee title acquired by the predecessors of plaintiff Marie L. Lever was executed and delivered February 10, 1922, at a time when the vendor enjoyed an absolute fee title, and that the agreement contained no reservations or restrictions relative to minerals, merely providing that the title to the lot was subject to the community oil and gas lease. The deed purporting to convey the minerals to the plaintiff trustee, while dated and acknowledged on February 1, 1922, was not delivered to and accepted by plaintiff trustee until February 11, 1922, or one day after the rights of the vendees under the contract had intervened. Thereafter, as heretofore recited, Hattie L. Smith by grant deed executed and delivered on September 1, 1922, pursuant to the terms of said contract, conveyed the lot in question to Osborne and Tietjen, the vendees thereunder. This deed, likewise by its terms, contained no reservations and purported to convey to the grantees a fee title absolute.

It clearly follows, therefore, that upon the execution of the contract the vendees therein became the equitable owners of the property, the vendor Hattie L. Smith retaining only the bare legal title as security for the payment of the purchase price until a conveyance of the legal title was made. (*Orange Cove* v. *Sampson,* 78 Cal. App. 334 [248 Pac. 526] ; *Retsloff* v. *Smith,* 79 Cal. App. 443 [249 Pac. 886].)

 Appellants direct attention to an apparent ambiguity in the two instruments delivered to the plaintiff trustee in that the instructions direct the trustee to pay the royalties to the *record owners,* as of the date of delivery of the lease, whereas the lease provides the royalties are to be paid to the owners in fee simple of the respective parcels or lots, the contention being that Hattie L. Smith was the *record owner* of the lot on the date of delivery of the lease, November 6, 1922, and continued as such until the recordation of her deed to Osborne and Tietjen on November 22, 1922. The two instruments refer to one and the same transaction and should be construed together, the obvious result of which is that the royalties were to be paid to the owners of the fee.

 The deed to the contract purchasers having been executed and delivered in the month of September, took effect upon delivery, and is presumed to have conveyed title in fee absolute. (Civ. Code, secs. 1056 and 1105.)

In our opinion, the findings and judgment of the trial court declaring the plaintiff Marie L. Lever to be the owner of the fee title to said property, and as such, entitled to the pro rata portion of the rents and royalties accruing under said lease, is a correct declaration of the rights of the respective parties.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 6, 1939.