[Civ. No. 19741.   Second Dist., Div. One.   Apr. 5, 1954.]

EDWIN W. PAULEY, Plaintiff and Respondent, v. ROBERT L. FAUCETT, as Executor, etc., et al., Defendants and Respondents; ALLEN R. MITCHELL et al., Appellants.

Harold F. Clary, Sprague & Sparks, Bailie, Turner, Lake & Sprague and R. Leslie Sparks for Appellants.

Donald O. Bircher, in pro per., L. S. B. Ritchie and Martin S. Ryan for Respondents.

DORAN, J.—The plaintiff, Edwin W. Pauley, as lessee of an oil and gas lease executed by the decedent Edward P. Shoemaker to one C. C. Potter and assigned by Potter to Pauley, filed this action in interpleader and for declaratory relief in reference to the disposition of royalties accruing under said lease and held by plaintiff. By order of court, accrued and accruing royalties were deposited with the clerk of the court.

The events leading up to the present litigation, chronologically arranged, are as follows:

March 14, 1947, Edward P. and Margaret F. Shoemaker, husband and wife, and owners of the real estate here involved, executed a property settlement agreement which recognizes that the realty is community property.

August 19, 1948, Shoemaker conveyed to appellant Mitchell a 3 per cent oil royalty in all oil, gas, etc. "within or underlying" or which may be produced or saved from the described acreage. This deed, made pursuant to permission granted by the Corporation Commissioner, was made subject to an outstanding oil lease in favor of Shell Oil Company which was thereafter surrendered. Shoemaker reserved the right to execute a new oil lease.

May 31, 1949, a second property settlement was made between the Shoemakers, granting to Mrs. Shoemaker 50 per cent of all moneys received from oil royalties, etc. or other moneys received by Mr. Shoemaker in any manner involving oil, gas or mineral rights. Upon sale of the real property, Mrs. Shoemaker was to receive a stipulated portion of the purchase price.

On August 26, 1949, Edward P. Shoemaker and appellant Mitchell executed an oil lease covering this property in favor of one C. C. Potter, which lease, a month later, was assigned by Potter to Edwin W. Pauley, plaintiff and respondent herein.

June 27, 1950, Shoemaker agreed to sell appellant Hyson one or more acres of land, together with an undivided 48½ per cent interest in oil, etc., thereunder, for which Hyson paid $2,000. An escrow was opened and a grant deed signed

by Mr. and Mrs. Shoemaker was deposited therein, but this escrow was never closed.

October 2, 1950, a supplemental agreement adding a new paragraph to the oil lease was signed by Shoemaker and plaintiff Pauley, but not by appellant Mitchell who held the 3 per cent royalty deed hereinbefore mentioned. Margaret F. Shoemaker approved the supplemental agreement and joined in its execution.

In November, 1950, the oil well drilled by Pauley came into production. Under the supplemental agreement just referred to, total royalties of 9 per cent were to be paid on production of oil from a contemplated whipstock or slant-drilled well surfaced on the Shoemaker property. The oil well here involved is such a slant-drilled well which is bottomed under an adjoining Pacific Electric right-of-way, and produces no oil underlying the property leased from Shoemaker. Of the 9 per cent royalty provided under the supplemental lease agreement, 7 per cent thereof is for oil and gas produced from an interval wholly outside the leased property, plus 2 per cent as consideration for use of the surface of the leased premises.

On December 11, 1950, there was a sale and escrow agreement by Shoemaker and one Mars Norton covering a certain portion of the leased property.

January 17, 1951, Shoemaker sold to the defendant Donald O. Bircher 2 per cent of the oil royalties accruing under the terms of the lease as amended, and in February, 1951, supplemental agreements and a grant deed from Shoemaker to Bircher were signed.

On February 16, 1951, Edward P. Shoemaker died, and defendant Robert L. Faucett was appointed executor of the decedent's will.

To Pauley's complaint seeking a determination of rights as to royalties the above mentioned parties answered, claiming certain rights therein by reason of the transactions and documents hereinbefore set forth.

The trial court, after finding that the royalties involved herein came entirely from the slant-drilled well bottomed "wholly without the external boundaries of the leased property," determined that the testator's wife, Margaret F. Shoemaker, by reason of the property settlement agreements, "is entitled to 4½% gross royalty production which is one-half of the gross royalty production interest," under the lease, which provided for a 9 per cent royalty to be paid by Pauley.

The other half of the 9 per cent royalty was divided by the trial court between defendant Donald O. Bircher who "is entitled to an undivided 2% of the gross royalty production" from the well, by reason of Shoemaker's sale to Bircher of such interest on January 17, 1951; and Robert L. Faucett, executor of the estate of Edward P. Shoemaker, who "is entitled to an undivided 2½% of the gross royalty production."

In respect to the appellant Allen R. Mitchell, it was determined that by the terms of the conveyance from Shoemaker to Mitchell on August 19, 1948, Mitchell had no interest in the royalty derived from the slant-drilled well since the oil was not produced from the described acreage, and Mitchell had refused to sign the supplemental lease agreement relating to slant-drilling. As to any oil produced from under the Shoemaker tract, Mitchell would, of course, be entitled to royalties as per the conveyance from Shoemaker.

Likewise, the appellant Wm. A. Hyson, who claimed under an uncompleted escrow with Shoemaker, was held not entitled to any interest in royalties produced from outside the Shoemaker tract, and therefore could claim no part of the income from the slant-drilled well in question. There was a similar holding in respect to the claim of Mars Norton who was held to have no interest in income from the well in question.

An examination of the record herein and of the documents on which the respective claims are predicated, leads to the conclusion that the judgment has correctly defined the rights of the various parties to participate in royalties derived from this well. No reversible error has been pointed out, and the record discloses substantial evidence in support of the findings.

## THE MITCHELL APPEAL

It is claimed that "Appellant Mitchell by the instrument dated August 19, 1948, acquired a permanent 3% of all oil or gas within or underlying or which might be produced and saved from the lands described therein and his proportionate part of all royalties payable under the oil and gas lease then covering the lands and any lease which might thereafter be placed thereon." This, it is contended, covers the oil produced from the slant-drilled well in question.

In the brief filed by defendant Faucett, executor of the estate of Edward P. Shoemaker, and in the trial court's memorandum opinion, it is correctly pointed out that under the

express terms of Shoemaker's deed to Mitchell, the 3 per cent oil royalty therein conveyed, and approved by the Corporation Commissioner, relates only to "an undivided 3% interest in all oil, gas and other hydrocarbon substances which may be produced and saved from" the property owned by Shoemaker. Mitchell acquired no rights other than those therein specified.

As stated in the Faucett brief, "No claim is made that defendant Mitchell is without right or interest in the oil and gas underlying the Shoemaker acreage. . . . Neither the brief of defendant Mitchell nor the record shows wherein that the Deed gives him any interest in the surface of the Shoemaker land or in the oil and gas being produced from the Pacific Electric lands." As hereinbefore mentioned, Mitchell, who did not see fit to sign the supplemental lease agreement of October 2, 1950, relating to slant-drilling, acquired no rights thereunder, and it is under this supplemental agreement, not under the original lease from Shoemaker and Mitchell to Potter, that the royalties here involved came into being.

Appellant Mitchell makes no claim that the deed from Shoemaker contains any ambiguity whatever. The conveyance therefore speaks for itself and requires no construction or interpretation. The precise grant of a 3 per cent interest in the proceeds from oil and gas underlying the specifically described Shoemaker property is necessarily limited to that particular land, and cannot be extended by construction or otherwise, to include, as in the present case, oil produced from under other lands. Nor do any succeeding clauses in the instrument modify the original grant.

Mitchell has cited no case having factual similarity tending to support the contention here made. ■ And, as said in *Paddock* v. *Vasquez* (Dec. 1953), 122 Cal.App.2d 396, 406 [265 P.2d 121], "Since the deed is clear, definite, certain and unambiguous, no act of either party may be considered in determining its meaning." ■ No court, whether trial or appellate, is empowered to make for the parties to an instrument, a contractual arrangement which those parties did not see fit to make.

### THE HYSON APPEAL

■ As hereinbefore indicated, the claim of appellant William A. Hyson, is predicated upon an agreement dated June 27, 1950, whereby Shoemaker agreed to sell to Hyson one or more acres of land together with an undivided 48½ per cent interest in and to the oil, gas and mineral rights there-

under. In this connection it may be noted that neither appellant Mitchell, nor respondent Pauley, were parties to this transaction, and the slant-drilled oil well here involved had not then come into being.

Appellant Hyson appears to claim a present interest in all oil royalties "under the doctrine of equitable conversion," and contends that "Hyson's rights are determined as of the date of his contract of sale." In this connection it is argued that by reason of the agreement with Shoemaker, Hyson is entitled to participate as a "co-lessor or co-owner" with Shoemaker. The arguments offered to sustain these contentions are based upon premises which find no support either in law or in fact, and are in nowise persuasive.

The record herein discloses that after the Shoemaker-Hyson agreement was executed, the matter was placed in escrow. The transaction remained uncompleted at the time of Shoemaker's death, February 15, 1951. While it is true that Hyson's agreement with Shoemaker was made after execution of the oil lease which was duly recorded, this agreement relates only to the Shoemaker property therein described, and, as said in the Faucett brief, "certainly, he cannot claim more than he is entitled to under his contract of purchase." In this respect the Hyson claim is refuted by the same reasoning which applied in the Mitchell appeal already discussed herein. Moreover, as was the situation in the Mitchell claim, Hyson was not a party to and had nothing to do with the supplemental lease agreement until the slant-drilled well was put down, and no oil has been produced from beneath the Shoemaker property covered by the Hyson agreement.

None of the cases cited in the Hyson brief stand as authority for permitting Hyson to share in the royalties here involved. In part, these cases deal with general principles about which there can be no controversy, but involve factual situations quite divergent from those here presented. For example, *Union Pac. R. Co.* v. *City of Los Angeles*, 53 Cal.App.2d 825 [128 P.2d 408], relates to Union Pacific's liability to pay a city license fee for "producing oil from any well located in the City," where the mouth of the well was within the city limits but the oil was taken from property within the City of Long Beach. No such situation exists in the present case.

So likewise, the expression in *Lever* v. *Smith*, 30 Cal.App. 2d 667, 672 [87 P.2d 66], that "upon execution of the con-

tract the vendees therein became the equitable owners of the property," relied upon in Hyson's brief, while doubtless good law in that case, which involved a purchaser of a lot subject to a community oil and gas lease, furnishes no support for Hyson's position in the present controversy.

The contention that the findings and conclusions of the trial court are erroneous, and that consequently the judgment must fail, is not borne out by the record. A fair trial seems to have been accorded to all parties concerned, the findings and conclusions of the trial court are supported by both law and evidence, and no reversible error has been pointed out.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 26, 1954, and Appellant Hyson's petition for a hearing by the Supreme Court was denied May 27, 1954.